# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| BARABARA MOORE | : | |
| Plaintiff, | : | Case No. 2:11-CV-122 |
| v. | : | JUDGE ALGENON L. MARBLEY |
| CHRISTENE MONEY, *et al.*, | : | Magistrate Terence P. Kemp |
| Defendants. | : | |

## **OPINION & ORDER**

### I. INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss Amended Complaint and/or for Qualified Immunity of Defendants Christine Money, Martha Spohn, Amy Ast, and David Pigman ("Motion"). (Doc. 8.) For the reasons stated below, the Motion is **DENIED**.

### II. BACKGROUND

Plaintiff, Barbara Moore, ("Plaintiff" or "Moore") is a deputy superintendent at the Ohio River Valley facility ("ORV") of the Ohio Department of Youth Services ("DYS"). On May 2, 2011, Moore filed an amended complaint alleging that her rights under the First and Fourteenth Amendments of the United States Constitution, through 42 U.S.C. § 1983, were violated by Defendants Christene Money, former director of DYS; Martha Spohn, director of DYS; Amy Ast, bureau chief for facility operations of DYS; and David Pigman, superintendent of ORV (collectively, "Defendants").

Moore's claims arise from events that took place in early 2010, related to *S.H. v. Taft*, Case No. 2:04-cv-1206, pending in this Court. A team of experts monitor DYS facilities to

1

ensure compliance with a stipulation entered into by the parties in the *S.H.* case, and this Court oversees that process. On February 24, 2010, Moore was asked to appear at a status conference regarding a DYS meal refusal policy ("Policy"). At the status conference, Moore explained that the Policy required that youths who refused to attend meals would be denied food. Moore stated that the Policy had been implemented at ORV and, as a result, several youths "had been denied meals when declining to eat" at that facility. (Am. Compl. ¶ 7.) Moore alleges that based at least in part on her testimony, DYS was ordered to alter the Policy and to show cause in a July 14, 2010, hearing as to why it should not be held in contempt.

Plaintiff was ordered by this Court to appear at the show cause hearing, where, according to Moore, she gave testimony that "portrayed Defendants in an unfavorable light." (*Id.* at ¶ 8.) DYS was not held in contempt, but this Court issued an order on July 16, 2010 which stated the "current protocol on meal refusals was not in compliance with the requirements of the Stipulation[] . . . that DYS shall provide youth in its custody with a safe and humane environment" and "a new policy shall be implemented with a training component, memorialized in writing, that is to be uniform and conducted consistently with DYS procedures for implementing policies." (*Id.*)

Moore alleges that Defendants retaliated against her as a result of the statements she made at the status conference and show cause hearing regarding the Policy. Specifically, she alleges that Defendants have made it impossible for her to perform her job since the status conference and show cause hearing because of, *inter alia*, the following:

1. An intimidating conversation that took place between Moore and a DYS attorney in which the attorney implied Moore was a "leak";

2. Defendant Money prohibited DYS employees from putting any information of substance in emails after the show cause hearing;

3. Defendant Pilgrim interfered with Moore's work by "circumventing and undermining her authority";

4. Defendants transferred Moore to a smaller office next to Defendant Pilgrim and away from her subordinates;

5. Defendants ordered persons from DYS's central office to come to ORV to investigate Moore and her department to try to find fault with her work;

6. Defendants threatened Moore's employment;

7. Moore was told her relationships with offices in DYS had worsened, but was given "nothing of substance" and "no specifics of exactly how the relationship had worsened";

8. Defendants removed one of Moore's primary job responsibilities without discussion;

9. Defendants removed Moore's staff without explanation;

10. Defendants refused to communicate with Moore regarding work-related matters;

11. Moore received supervisory counseling which constituted corrective action; and

12. Moore attended a meeting with Defendant Spohn and Defendant Ast in which Moore was informed "court monitors, field members and staff believed that [Moore] was not a team member, was a negative leader, was not a member of the 'family,' and was not in line with Pigman's 'philosophy.'"

(*Id.* at ¶ 9.)

Moore alleges that Defendants' conduct post-testimony has been substantially different than it was prior to Moore's statements at the status conference and show cause hearing. Plaintiff further claims that "[b]ecause of the retaliatory harassment that has been alleged . . .

[she] has been forced to seek medical care and to go on disability leave with a consequent loss in pay." (*Id.* at ¶ 12.)

The issues have been fully briefed by both parties and the Motion is now ripe for review.

### III. STANDARD OF REVIEW

Rule 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Although a plaintiff need not plead specific facts, the complaint must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

The plaintiff's ground for relief must entail more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff has satisfied Rule 12(b)(6) if he or she pled enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Additionally, the Court must accept as true allegations of fact contained in the complaint, and the complaint must be construed in the light most favorable to the party opposing the motion to dismiss. *Davis H. Elliot Co. v. Caribbean Util. Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975). Claims under 42 U.S.C. § 1983 are not subject to heightened pleading standards. *Memphis, Tenn., Area Local, Am. Postal Workers Union, AFL/CIO v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004).

### IV. LAW & ANALYSIS

Defendants argue that Moore's retaliation action should be dismissed for any of the following reasons: "(1) she fails to allege she engaged in conducted protected by the First

4

Amendment; (2) she fails to allege actual injury or adverse employment action; and (3) the Defendants are entitled to qualified immunity." (Doc. 8.) The Court will address each argument in turn, but finds all of Defendants' arguments unpersuasive at this stage in the litigation.

**A. First Amendment Retaliation Claim**

To establish a claim of retaliation under the First Amendment, Plaintiff's complaint must set forth three elements: (1) Plaintiff was engaged in a constitutionally protected activity; (2) Defendants' adverse action caused Plaintiff to suffer an injury that would "likely chill a person of ordinary firmness from continuing to engage in that activity"; and (3) the adverse action was motivated at least in part as a response to the exercise of Plaintiff's constitutional rights. *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001). Defendants argue that Moore has failed to plead sufficient facts to satisfy the first and second elements of a First Amendment retaliation claim, but they do not set forth any arguments related to the third element.[1]

1. *First Amendment Speech*

In order for a government employee's speech to warrant First Amendment protection, the employee must have spoken as a citizen addressing a matter of public concern. *McMurphy v. City of Flushing*, 802 F.2d 191, 197 (6th Cir. 1986). Whether speech addresses a matter of

---

[1] Moore alleges that "Defendants retaliated against Plaintiff because of her statements to the Court in the status conference on February 24, 2010 and her testimony in the show cause hearing on July 14, 2010" and that "Defendants' conduct, that has been described in paragraph 9, is substantially different than the way in which Defendants treated Plaintiff before her testimony." (Am. Compl. ¶¶ 9, 10.) Defendants have not yet offered any facts that support a finding that their change in behavior towards Moore after the status conference and show cause hearing was due to some non-retaliatory reason. Because this Court must accept as true all allegations of fact contained in the complaint, and the complaint must be construed in the light most favorable to the party opposing the motion to dismiss, *see Davis H. Elliot Co.*, 513 F.2d at 1182, this Court finds Plaintiff has made allegations sufficient to support the third element of a First Amendment retaliation claim.

5

public concern is a question of law to be "determined by the content, form, and context of a given statement as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). In this Circuit, a "matter of public concern usually involves a matter of political, social, or other concern to the community." *Jackson v. City of Columbus*, 194 F.3d 737, 746 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v Sorema N.A.*, 534 U.S. 506, 510 (2002). The rationale behind protecting a government employee's right to comment as a citizen on matters of public concern is that "public employees are often the member of the community who are likely to have informed opinions as to the operation of their public employers, operations which are of substantial concern to the public." *City of San Diego v. Roe*, 543 U.S. 77, 82 (2004).

A government employee must also demonstrate that his or her interest in the speech outweighs the government's countervailing interest in promoting the efficiency of the public service it provides as an employer. *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205 Will Cmty., Ill.*, 391 U.S. 563, 568 (1968). This determination is a question of law for the court to decide. *Connick*, 461 U.S. at 147. As the Supreme Court explained in *Garcetti v. Ceballos*:

> The Court's decisions, then, have sought both to promote the individual and societal interest that are served when employees speak as citizens on matters of public concern and to respect the needs of government employers attempting to perform their important public functions. . . . Underlying our cases has been the premise that while the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize the employee grievance.

547 U.S. 410, 420 (2006) (citations omitted).

The subject of much debate among the parties is whether the facts in *Garcetti* are similar to or distinguishable from the facts here. In *Garcetti*, a deputy district attorney reviewed a case that was pending in the district attorney's office and relayed concerns he had regarding

6

inaccuracies in the case file to supervisors. *Id.* at 414. He thereafter followed-up by preparing a disposition memorandum in which he recommended dismissal of the case. *Id.* The office decided to proceed with the prosecution despite the district attorney's concerns, and at the trial, the district attorney was called by the defense to recount the observations that led him to challenge the office's decision to move forward with the case. *Id.*

After the trial, the district attorney brought a lawsuit against the county and supervisors at the office alleging that he was subjected to a series of retaliatory employment actions including reassignment, transfer to another courthouse, and denial of a promotion. *Id.* at 415. The Supreme Court held that the district attorney's memorandum was not speech protected by the First Amendment. *Id.* It was nondispositive that the district attorney's views were expressed in the workplace or that the memorandum concerned a subject matter related to the district attorney's employment, but "[t]he controlling factor . . . is that his expressions were made pursuant to his duties." *Id.* at 420–21. The Supreme Court held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. The Supreme Court did not discuss the district attorney's testimony in its analysis. *See generally Garcetti*, 547 U.S. 410.

The parties also debate whether the facts in *Weisbarth v. Geauga Park District* are analogous to or distinguishable from the facts here. 499 F.3d 538 (6th Cir. 2007). In *Weisbarth*, the court held that where a park ranger made negative comments about her department to a paid consultant who had been retained to evaluate the department, those statements were not protected speech under the First Amendment. *Id.* at 540, 543–47. The court emphasized that the conversation between the park ranger and the consultant took place in the context of their official

7

duties and was regarding matters that the consultant was specifically asked to look into about morale and performance issues. *Id.* at 543.

This Court finds that Moore has alleged sufficient facts to sustain her pleading burden that she was engaged in constitutionally protected activity. When Moore testified regarding the Policy at both the status conference and the show cause hearing, she is speaking as a citizen on a matter of public concern. Unlike the district attorney in *Garcetti,* giving testimony was not part of her official duties. *See* 547 U.S. at 420–21; *see also Reilly v. City of Atlantic City*, 532 F.3d 216, 231 (3d Cir. 2008) ("When a government employee testifies truthfully, s/he is not simply performing his or her job duties . . . rather, the employee is acting as a citizen and is bound by the dictates of the court and the rules of evidence."). The district attorney in *Garcetti* prepared the memorandum detailing his concerns about a case because that was an official duty of his employment. 547 U.S. at 420–21. Similarly, the park ranger in *Weisbarth* answered the consultant's questions on moral and performance issues because it was her job to do so, and the consultant had been retained specifically to ask such questions. 499 F.3d at 543. It was not part of Moore's official duties to provide testimony that was ordered by this Court.

Furthermore, conditions of a juvenile correctional facility and alleged meal refusal occurring in that facility are by definition matters of public concern. This Circuit has specifically held that statements exposing potential corruption in a government-run entity are precisely the type of statements that should be protected by the First Amendment. *See v. City of Elyria*, 502 F.3d 484, 493 (6th Cir. 2007) ("Statements exposing possible corruption in a police department are exactly the type of statements that demand strong First Amendment protections."); *see also Solomon v. Royal Oak Twp.*, 842 F.2d 862, 865 (6th Cir. 1988) ("[S]peech disclosing public corruption is a matter of public interest and, therefore, deserves constitutional protection.");

*Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986) ("Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law . . . ."); *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 46 (2d Cir. 1983) ("An allegation of corrupt and wasteful practices at a large municipal hospital, made to the city official empowered to investigate such charges, obviously involves a matter of public concern.").

Defendants do not offer non-retaliatory reasons for their changed behavior towards Moore at this early stage in the litigation, making it difficult for the Court to engage in the *Pickering* balancing test. *See* 391 U.S. at 568. It is hard for this Court to imagine, however, a scenario in which obtaining truthful testimony on these important matters of public concern would be outweighed by a countervailing interest the government has here in promoting the efficiency of the public services it provides as an employer. *See id.* Nevertheless, further factual discovery is necessary before the Court attempts to perform the *Pickering* balancing test. *See Evans-Marshall v. Bd. Of Educ. Of the Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 231 (6th Cir. 2005) (finding that a "claim that [a teacher's] termination was for non-retaliatory reasons cannot be considered without some factual discovery" and "[o]n a motion to dismiss, we are required to assume the plaintiff's factual allegations to be true").

Therefore, this Court finds Moore's complaint contains sufficient allegations of fact that she was engaged in a constitutionally protected activity.

2. *Actual Injury or Adverse Employment Action*

Defendants next argue that Moore has failed to allege that she suffered any actual injury or adverse employment action. Specifically, Defendants argue that "the Amended Complaint's list of retaliatory acts, such as her transfer to a smaller office, and the reassignment of 'her' subordinates and 'her' duties . . . do not rise to the level of actual injury." (Doc. 8.)

9

As stated above, Moore must demonstrate that the Defendants' adverse action caused her to suffer an injury that would "likely chill a person of ordinary firmness from continuing to engage in that activity." *Cockrel*, 270 F.3d at 1048; *accord Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999).

Moore has alleged a long list of actions Defendants allegedly took in retaliation against Moore for providing testimony in the *S.H.* case. For example, Moore has alleged Defendants, *inter alia*, transferred her to a smaller office away from her subordinates; threatened her employment; removed one of her primary job responsibilities without discussion; removed her staff without discussion; and informed her that "court monitors, field members and staff believed that [Moore] was not a team member, was a negative leader, was not a member of the 'family', and was not in line with Pigman's 'philosophy.'" (Am. Compl. ¶ 9.) This Court finds that when considered collectively and taken as true, as this Court must do on a motion to dismiss, these actions would "likely chill a person of ordinary firmness" and encourage that person to cease from engaging in the activity causing the retaliatory behavior. *See Cockrel*, 270 F.3d at 1048; *Bell*, 308 F.3d at 606; *Thaddeus-X*, 175 F.3d at 394.

Further development of the factual record will be necessary to determine if there were any non-retaliatory reasons for Defendants' actions, *see Evans-Marshall*, 428 F.3d at 231, but Moore has met her pleading burden at this stage in the litigation.

### B. Qualified Immunity

Defendants' final argument in support of dismissal is that they are entitled to qualified immunity because Moore has failed to allege that she was engaged in any protected activity and has not pointed to any clearly established law that identifies Defendants' activity as unlawful.

Plaintiff counters that her First Amendment right was clearly established, relying on the Sixth Circuit's reasoning in *Bell*.

The Supreme Court has held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotations and citations omitted). An official is immune from both damages and suit if qualified immunity is applicable. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The plaintiff carries the burden of proof to show that the defendant is not entitled to qualified immunity. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

This Circuit employs a two-step process when deciding questions of qualified immunity. First, a court must determine whether, on the plaintiff's facts, a constitutional violation has occurred. *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002). Second, the court considers whether that violation involved "clearly established constitutional rights of which a reasonable person would have known." *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996). As explained above, Moore has pled adequate facts demonstrating that a constitutional violation has occurred. *See Evans-Marshall*, 428 F.3d at 232 (citing *Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 677–79 (6th Cir. 2001)) (explaining that the first prong of qualified immunity is met when First Amendment retaliation is adequately alleged). Therefore, the Court will focus its discussion on the second prong of the qualified immunity analysis.

This Circuit has explained that:

> For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . Although it need not be the case that the very action in question has

> previously been held unlawful, . . . in the light of pre-existing law, the unlawfulness must be apparent. . . . [O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances. . . . Although earlier cases involving fundamentally similar facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding.

*Bell*, 308 F.3d at 601–02 (internal quotations and citations omitted).

A reasonable person would understand that retaliating against a government employee who provided truthful testimony about a matter of public concern, specifically juvenile facilities and meal refusal occurring in these facilities, in compliance with a court order, would violate that employee's First Amendment rights. Here there are "earlier cases involving fundamentally similar facts" which "provide especially strong support for a conclusion that the law is clearly established." *See id.* Courts have held that statements exposing potential corruption in a government-run entity are precisely the type of statements that should be protected by the First Amendment. *See supra* Part IV.A.1. Again, "it need not be the case that the very action in question has previously been held unlawful" but "in light of pre-existing law, the unlawfulness must be apparent." *Bell*, 308 F.3d at 601–02. And this Court finds that in light of existing law, the unlawfulness of retaliating against an employee for speech exposing potential corruption in a government-run entity would be apparent to a reasonable person. *See id.*; *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992).

Moore has set forth sufficient allegations of fact in her amended complaint to support a conclusion that Defendants are not entitled to qualified immunity.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion is **DENIED**.

**IT IS SO ORDERED.**

                                                             **s/ Algenon L. Marbley**
                                                             **Algenon L. Marbley**
                                                            **United States District Judge**

**Dated: November 29, 2011**