**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **BARBARA MOORE** | : | |
| | : | |
| Plaintiff, | : | Case No. 2:11-CV-122 |
| | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| **CHRISTINE MONEY**, *et al.*, | : | Magistrate Terence P. Kemp |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment and/or for Qualified Immunity of Defendants Christine Money, Martha Spohn, Amy Ast, and David Pigman ("Motion"). (Doc. 54). For the reasons stated below, the Motion is **DENIED**.

**II. BACKGROUND**

**A. Factual Background**

Plaintiff, Barbara Moore, ("Plaintiff" or "Moore") started working at the Ohio Department of Youth Services ("DYS") in 1994 as a Juvenile Corrections Officer ("JCO"). Moore worked at DYS's Scioto Juvenile Correctional Facility ("Scioto"). Though she started at DYS as a JCO, she has since held various positions at different DYS facilities. After working as a JCO for two and a half years, Moore became a Social Worker at Scioto, a position she held for approximately four years. Around the year 2000, she left her Social Worker position at Scioto to become a Unit Manager at Marion Juvenile Correction Facility ("Marion"). As a Unit Manager,

1

she supervised the JCOs and Social Workers assigned to her unit.  Moore maintained her position at Marion for approximately six years.  In early 2007, Moore and her husband, Scott Moore, also employed by DYS, chose to transfer to the Ohio River Valley DYS facility ("ORV").

In early August 2007, upon transferring to ORV, Moore applied for the position of Deputy Superintendent of Direct Services ("Deputy Superintendent").  Prior to being officially offered the position, Moore worked as the Deputy Superintendent pursuant to a Temporary Working Level.  In early November 2007, Moore accepted the full appointment and promotion to Deputy Superintendent.  As the Deputy Superintendent, Moore oversaw all of the housing units at ORV, which included directly supervising operations, safety and security of the facility, and general compliance with DYS policies and procedures.  Additionally, Moore made rounds at least once a week, during which she talked to staff members within the housing units, checked log books, talk to the youth, checked on any youth in seclusion and the corresponding seclusion logs, and spoke with youth who asked to speak to her.

In May 2008, DYS entered into a Stipulation in the ongoing case, *S.H. v. Stickrath*, No. 2:04-CV-1206, Doc. 108 (S.D. Ohio May 21, 2008).  As part of the Stipulation, the Court retained jurisdiction to enforce the various terms set forth in the agreement, as well as the authority to require reports about the status of DYS policies implemented pursuant to the Stipulation.  Among the terms was the development of a youth grievance system, intended to provide timely investigation of complaints and communication with the youth.  The parties agreed to a period of five years to train properly additional staff and to implement the terms of the Stipulation.  Additionally, the parties agreed to the appointment of federal court monitors who specialized in juvenile justice.  The monitors were responsible for overseeing the

implementation and compliance with the Stipulation, which they did through things such as site visits, meetings with staff, and training for staff.  On numerous occasions, Moore worked with federal monitor, Steve Martin.  Martin monitored the ORV through site visits, and reviewing documentation for compliance purposes.  Martin and Moore also discussed the adequacy of the investigations and oversight being conducted by Moore.

In January 2010, Deputy Director Christine Money ("Money") was made aware of youth at ORV who had not received meals in four days.  Amy Ast ("Ast"), Bureau Chief for Facility Operations of DYS, communicated with Moore via email about a youth who had told attorneys that he or she had not eaten for three days.  After that incident, youth meals were more closely monitored.  On February 22, 2010, this Court ordered a Status Conference in *S.H.*, set for February 24, 2010.  The Status Conference, at which Moore testified, dealt primarily with the protocol related to youth meal refusals.

Subsequent to the Status Conference, this Court issued an Order, stating that the meal policy then in place needed to be updated, which included DYS keeping records of youth meal refusals made out of fear.  *S.H. v. Stickrath*, No. 2:04-CV-1206, Doc. 160 (S.D. Ohio May 21, 2008).  The Court also ordered DYS to provide it with logs of meal refusals from the various DYS locations that occurred from August 5, 2009 through February 23, 2010.  *Id.*

In May 2010, Money was appointed as Interim Director of DYS.  On June 4, 2010, this Court ordered a Show Cause hearing, at which Money was to be present.  In particular, this Court held the hearing for the Defendant to "show cause as to why they should not be held in contempt for submitting false and or inaccurate data pursuant to an Order of this Court." *S.H. v. Stickrath*, No. 2:04-CV-1206, Doc. 179 (S.D. Ohio May 21, 2008).  The Court ordered the hearing after discovering that none of the summary data provided in the documentation from

each DYS facility matched the log books maintained by DYS.  On July 14, 2010, the Court held the Show Cause hearing, at which Moore testified.

During her testimony at the Status Conference and the Show Cause hearing, Moore provided specific information concerning the implementation of the meal policy at ORV, and how it was working for the facility and the youth.  Moore testified that, despite the adoption of DYS' cafeteria refusal policies, there had been multiple instances of youth not eating.  Moore also stated that the policy had been applied inconsistently, resulting in certain youth being provided carry-back meals, while others were not afforded that same option.  Additionally, Moore noted that DYS did not have a coherent system for recording which youth were going to the cafeteria or being fed, or for reporting specific reasons for the youth failure to eat. Following the Show Cause hearing, the Court issued an Order in which it found that DYS would not be held in contempt.    The Court also ordered that a new meal policy must be in place by July 30, 2010.  *S.H. v. Stickrath*, No. 2:04-CV-1206, Doc. 202 (S.D. Ohio May 21, 2008).

Around August 2010, David Pigman ("Pigman" or "Superintendent Pigman") was selected as the new Superintendent of DYS.  During certain site visits to ORV in late September 2010, two of the federal monitors expressed concerns that Pigman and Moore approached problems at ORV differently.  Shortly thereafter, Pigman moved Moore's office from its prior location, where she had been working directly with her staff, to the administrative building at ORV, the same building in which Pigman's office was located.  Pigman stated that the intent behind moving Moore's office was to improve their lines of communication.

Between September 2010 and January 2011, Moore had two disciplinary meetings with Pigman.  The first started as a supervisory conference between Moore and Pigman, at which they discussed Moore's review of a specific incident and Moore's investigation report.  Pigman

recorded what the two had discussed.  Following the supervisory conference, Moore spoke to the investigator, Terri Jacobs, about the investigation report.  Moore met with Pigman and Jennifer Fears, DYS' Chief Inspector, on October 7, 2010.  It is disputed whether that meeting resulted in any kind of discipline for Moore.  In January 2011, Spohn and Ast met with Moore at Central Office to discuss her lack of communication with Pigman. The purpose of the meeting was to make clear to Moore that Pigman was the Superintendent, and that Moore had an obligation to work with him.

Moore's last day of work was March 15, 2011.  She left work to seek medical treatment, and never returned.  ORV closed around September 2011.

### B. Procedural Background

Moore filed her Complaint on February 8, 2011.  (Doc. 1).  On May 2, 2011, Moore filed an amended complaint alleging that her rights under the First and Fourteenth Amendments of the United States Constitution, through 42 U.S.C. § 1983, were violated by Defendants Money, former director of DYS; Martha Spohn, director of DYS; Ast; and David Pigman, superintendent of ORV (collectively, "Defendants").

On July 26, 2013, Defendants moved for summary judgment on all claims.  (Doc. 54).  In addition to seeking dismissal of the case, Defendants allege that they are individually entitled to qualified immunity in this case.

On January 13, 2014, this Court held oral argument on Defendants' Motion for Summary Judgment, and counsel for all parties participated.  This matter is, therefore, ripe for review.

### III. STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if proof of that fact would establish one of the elements of a claim and would affect the application of governing law to the rights of the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis, Wyo.*, 542 P.2d 867, 872 (1975)).

A movant for summary judgment meets its initial burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Dixon v. Anderson*, 928 F.2d 212, 216 n. 5 (6th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986)). At that point, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Id*. (quoting Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). It is not, however, the role of the trial court to "resolve factual disputes by weighing conflicting evidence because it is the jury's role to assess the probative value of the evidence." *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 230 (6th Cir. 1990) (citing *Stone v. William Beaumont Hosp.,* 782 F.2d 609, 615 n. 5 (6th Cir. 1986); *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980)). All evidence and reasonable inferences must be viewed in the light most favorable to the party opposing the motion. *Pucci*, 628 F.3d at 759 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### IV. LAW & ANALYSIS

Defendants argue that Moore's case should be dismissed for any of the following reasons: "(1) she did not engage in conduct protected by the First Amendment; (2) the

defendants never took any actions against her; and (3) there is no evidence to causally connect the actions Moore claims as retaliatory to her courtroom testimony in 2010." (Doc. 54).

### A. First Amendment Retaliation Claim

To establish a claim of retaliation under the First Amendment, Plaintiff's complaint must set forth three elements: (1) Plaintiff was engaged in a constitutionally protected activity; (2) Defendants' adverse action caused Plaintiff to suffer an injury that would "likely chill a person of ordinary firmness from continuing to engage in that activity"; and (3) the adverse action was motivated at least in part as a response to the exercise of Plaintiff's constitutional rights. *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001). Defendants argue that Moore cannot, as a matter of law, demonstrate any adverse action by any Defendants, nor show any evidence that Defendants reacted negatively to her testimony, in turn using it against her. Additionally, Defendants allege that there is no clearly established law that supports Moore's claim. The Court shall address each prong of the First Amendment retaliation claim below.

#### 1. *Constitutionally Protected Activity: First Amendment Speech*

The Constitutional activity in which Plaintiff alleges she was engaged was the exercise of her First Amendment rights. In order to determine whether Plaintiff's speech, as a government employee, warrants First Amendment protection, the Court must first consider whether the employee spoke as a citizen, and the employee must have addressed a matter of public concern. *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542 (6th Cir. 2007). The Sixth Circuit has set forth the framework used to determine whether a government employee's speech is protected:

> a public employee's speech is only protected when: (1) it touches on "a matter of public concern," *Connick v. Myers,* 461 U.S. 138,

7

> 146 (1983); (2) it is not uttered pursuant to the employee's "official duties" but rather "as a citizen," *Garcetti v. Ceballos,* 547 U.S. 410, 421, 424, (2006); and (3) the employee's interest in the speech outweighs the government's interest in promoting "the effective and efficient fulfillment of its responsibilities to the public," *id.* at 450. All three are necessary but not sufficient conditions. *Evans–Marshall v. Bd. of Educ. Of the Tipp City Exempted Vill. Sch. Dist.,* 624 F.3d 332, 338 (6th Cir. 2010).

*Housey v. Macomb Cnty.*, 534 F. App'x 316 (6th Cir. 2013).

It is well established in this Circuit that "a matter of public concern usually involves a matter of political, social, or other concern to the community." *See v. City of Elyria*, 502 F.3d 484, 492 (6th Cir. 2007) (internal citation omitted). The rationale behind protecting a government employee's right to comment as a citizen on matters of public concern is that "public employees are often the members of the community who are likely to have informed opinions as to the operation of their public employers, operations which are of substantial concern to the public." *City of San Diego v. Roe*, 543 U.S. 77, 82 (2004). A government employee must also demonstrate that his or her interest in the speech outweighs the government's countervailing interest in promoting the efficiency of the public service it provides as an employer. *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205 Will Cmty., Ill.*, 391 U.S. 563, 568 (1968). This determination is a question of law for the court to decide. *Connick*, 461 U.S. at 147. As the Supreme Court explained in *Garcetti v. Ceballos*:

> The Court's decisions, then, have sought both to promote the individual and societal interest that are served when employees speak as citizens on matters of public concern and to respect the needs of government employers attempting to perform their important public functions. . . . Underlying our cases has been the premise that while the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize the employee grievance.

547 U.S. 410, 420 (2006) (citations omitted).

8

Though the Sixth Circuit has not expressly addressed the issue of in-court testimony as protected public employee speech, it has considered similar issues in other cases. In *See v. City of Elyria*, the Court found that the speech of a police officer, who had reported information to the Federal Bureau of Investigation ("FBI") regarding corruption within his police department, was protected under the First Amendment. 502 F.3d 484, 492-96 (6th Cir. 2007). Though the speech was directly related to his job, the Court found, through an application of the relevant balancing test, that See's First Amendment right to disclose allegations of misconduct within the police department to the FBI was not sufficiently outweighed by the City's interest in promoting the efficiency of public services. *Id.*

In the case *sub judice*, Defendants argue that Moore did not engage in protected speech under the First Amendment when she testified before this Court at the February 2010 Status Conference and the July 2010 Show Cause Hearing. Noting that a public employee's speech is not constitutionally protected if it was made as part of his or her official duties, Defendants claim that Moore has failed to show any instances in which her speech was not related to her official duties, thereby making it unprotected. According to Defendants, Moore's in-court testimony should not be considered the action of a private citizen because she testified due to her status as a DYS employee. Specifically, Defendants note that Moore's testimony regarding meal issues at ORV arose directly from her employment, and therefore must be considered speech by a public employee. Finally, Defendants argue that, because Moore was asked to testify by DYS and this Court, her speech was not that of a private citizen, but of a public employee.

Conversely, Plaintiff argues that her speech was, in fact, protected under the First Amendment. While she acknowledges that her testimony at the Status Conference and the Show Cause Hearing was in regard to the application of the DYS meal policy based on her work as the

9

Deputy Superintendent, Plaintiff does not agree with Defendants' assertion that her testimony was unprotected speech.  Plaintiff states that providing court testimony was not in her job description, and, because her testimony provided the Court with important information concerning the meal policy at ORV, her speech should be protected under the First Amendment.

This Court finds that Plaintiff has demonstrated genuine issues of material fact regarding whether her speech was protected under the First Amendment.  While Defendants offer various pieces of evidence in an effort to show that Moore's testimony did not touch on a matter of public concern, a reasonable jury could find that conditions of a juvenile correctional facility and alleged meal refusal occurring in that facility are matters of public concern.  Plaintiff also presents evidence that calls into question whether Moore's speech was not given pursuant to her official duties, but rather as a concerned citizen.  In *Handy-Clay v. City of Memphis, Tennessee*, the Court found that a city employee spoke as a concerned citizen when speaking about allegations of public corruption, stating: "[w]e find nothing in the complaint that suggests that the duties of her position as public records coordinator included reporting on government corruption and mismanagement of public funds."  695 F.3d 531, 540-43 (6th Cir. 2012).  Similarly, Plaintiff presents an issue of material fact as to whether Moore's title as Deputy Superintendent included testifying in Court, and if such testimony was considered included in her job title following the creation of the Stipulation in *S.H.*

Though it has not been directly addressed by the Sixth Circuit, other Circuits have discussed whether sworn testimony by a public employee is protected under the three-prong test for First Amendment speech.  *See supra*, Section III.A.1.  *Reilly v. City of Atlantic City* concerned a former police officer's First Amendment retaliation claim based on his in-court testimony regarding corruption within the police department.  532 F.3d 216 (3rd Cir. 2008).

Applying the "settled principles" that protect truthful testimony in light of *Garcetti*, the Court stated:

> Thus, the act of offering truthful testimony is the responsibility of every citizen, and the First Amendment protection associated with fulfilling that duty of citizenship is not vitiated by one's status as a public employee. That an employee's official responsibilities provided the initial impetus to appear in court is immaterial to his/her independent obligation as a citizen to testify truthfully.

*Id.* at 231.

The Court concluded that Reilly's truthful testimony constituted citizen speech, and was not foreclosed under the "official duties" doctrine of *Garcetti*. *Id.* at 231-32. Similarly, in *Clairmont v. Sound Mental Health*, the Court found that subpoenaed testimony given by a public employee was not part of his official duties. 632 F.3d 1091, 1105 (9th Cir. 2011). The Court noted that Clairmont's job description did not include testifying in court proceedings, thereby supporting the assertion that his testimony was not made as part of his official duties. In the same way, Moore was not asked to testify as a generic fact witness by DYS. Rather, she was called to testify at the February 2010 Status Conference and the July 2010 Show Cause Hearing by this Court, specifically. *S.H. v. Stickrath*, No. 2:04-CV-1206, Doc. 158 and 180 (S.D. Ohio May 21, 2008). Accordingly, Moore has raised a genuine issue of material fact as to whether her testimony was given pursuant to any official duties, or whether she appeared and offered testimony pursuant to her "independent obligation as a citizen."

Finally, in considering whether Moore's interest in testifying about ORV's meal policy outweighs the state's interest in promoting the efficiency of ORV, this Court finds that, in construing the evidence in the light most favorable to Plaintiff, Moore's interest prevails. Because Moore's testimony substantially involved matters of public concern, Defendants, in order to tip the *Pickering* balancing test in their favor, need a strong showing that Moore's

speech interfered with promoting the effectiveness and efficiency of DYS. *Cockrel*, 270 F.3d at 1053-54. Defendants have failed to demonstrate an absence of a genuine issue of material fact. Accordingly, it would be inappropriate for this Court to grant summary judgment on this issue.

2. *Actual Injury or Adverse Employment Action*

The Court next considers the second prong of Moore's First Amendment retaliation claim: whether Defendants' adverse action caused Plaintiff to suffer an injury that would "likely chill a person of ordinary firmness from continuing to engage in that activity." *Cockrel*, 270 F.3d at 1048; *accord Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999). Adverse employment actions traditionally concerned actions such as "discharge, demotions, refusal to fire, nonrenewal of contracts, and failure to promote." *Thaddeus-X*, 175 F.3d at 396. The Sixth Circuit, however, has expanded adverse action claims to include "any action that would deter a person of ordinary firmness from exercising protected conduct…which may include harassment or publicizing facts damaging to a person's reputation." *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010). Furthermore, under this prong, the Court must tailor its analysis to the circumstances, and consider that public employees may have to endure more than the average citizen. *Id.* (citing *Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005)). Determining whether retaliatory action is "sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Bell*, 308 F.3d 584 (internal citations omitted).

Defendants argue that Moore has failed to show that she suffered any actual injury or adverse employment action. Specifically, Defendants state that Moore's various interactions with Superintendent David Pigman, and any resulting changes in the details of Moore's

12

employment did not constitute a question of fact regarding Moore's claim of retaliation. None of the issues cited in Moore's complaint, ranging from any changes in her job responsibilities to discussions of her work product to disciplinary meetings, according to Defendants, rises to the level of adverse action.

Plaintiff argues that, even if the individual injuries did not result in sufficient harm, the cumulative injury caused by Defendants' action did, in fact, result in adverse action. In particular, Plaintiff points to the series of Defendants' actions that substantially changed her role. Plaintiff notes that she was isolated from her coworkers, and was essentially frozen out of the department coordination that was a key aspect of her job. Moore has alleged, among other things, that Defendants transferred her to a smaller office away from her subordinates; threatened her employment; removed one of her primary job responsibilities without discussion; removed her staff without discussion; told her subordinates that they no were no longer required to adhere to Moore's directions; and questioned her loyalty to DYS and her job. Additionally, Plaintiff alleges that she was repeatedly bypassed on matters that fell within the scope of her responsibility. Plaintiff argues that, when Defendants questioned her loyalty, among other instances, she interpreted their actions as a threat to her employment.

This Court finds that there are issues of material fact regarding whether Plaintiff suffered adverse action. Moore has alleged a long list of actions Defendants allegedly took in retaliation against her for providing testimony in the *S.H.* case. Indeed, these individual incidents suffered by Plaintiff are sufficient to constitute adverse action when considered in the aggregate. *See Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 399 (6th Cir. 2010) (claims considered in the aggregate were found to be adverse as a whole) (citing *Lahar v. Oakland County*, 304 F. App'x 354, 358-59 (6th Cir. 2008)). The issues of material fact raised by Plaintiff are simply too

great to be ignored, and should be presented to a jury for decision.  A reasonable jury, considering the facts in the case, could find that Defendants' actions would "likely chill a person of ordinary firmness."  *See Cockrel*, 270 F.3d at 1048; *Bell*, 308 F.3d at 606; *Thaddeus-X*, 175 F.3d at 394.  Therefore, Plaintiff has met her burden under the adverse action prong of First Amendment retaliation.

### 3. *Causal Connection*

The final step in determining First Amendment retaliation is to consider whether the adverse action was motivated at least in part as a response to the exercise of Plaintiff's constitutional rights.  Stated another way, Plaintiff must demonstrate that the protected conduct and the adverse action were causally connected.  *Vereecke*, 609 F.3d at 399 (citing *Thaddeus-X*, 175 F.3d at 399).  The Sixth Circuit has set forth a two-step test to determine causation in retaliation actions:

> A plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, *Siggers–El v. Barlow,* 412 F.3d 693, 702 (6th Cir.2005), but also (2) that the individual taking those acts was "motivated in substantial part by a desire to punish an individual for exercise of a constitutional right," *Thaddeus–X,* 175 F.3d at 386.

*King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) *cert. denied*, 133 S. Ct. 985 (U.S. 2013).

Defendants argue that Moore cannot prove a causal connection between her speech and the resulting, alleged adverse action.  Specifically, Defendants claim that Moore does not point to any adverse actions after her testimony at the February 2010 Status Conference.  Defendants also note that Moore cannot show that her speech motivated Defendants' actions, which, on the whole, should defeat her claim.  Furthermore, Defendants state that Moore does not offer any direct evidence that Defendants considered Moore's speech as motivation for any allegedly

14

retaliatory actions. Finally, Defendants argue that Moore did not show how any actions taken against her differed from actions taken against co-workers similarly situated.

Plaintiff argues that Defendants' actions were clearly linked to her courtroom testimony. Plaintiff points to a continued pattern of changes in her work responsibilities, all of which occurred subsequent to her testimony in *S.H.* Plaintiff also emphasizes what she considers to be one of the greatest indications of causal connection: the fact that she was offered the position of ORV Superintendent, which would have been a promotion, prior to testifying, but was met with a diminution in duties following the testimony. In particular, Plaintiff criticizes Defendants' argument that there were no direct comments made between the parties regarding Plaintiff's testimony, as, Plaintiff argues, such conversations would result in obvious consequences for Defendants.

Similarly to the analysis under the second prong in the First Amendment retaliation claim, Plaintiff has raised various issues of material fact in determining a causal connection between Plaintiff's testimony in *S.H.* and Defendants' actions and interactions with Plaintiff, all of which should be decided by a jury. In her testimony, Moore disputed the evidentiary record that had theretofore been established by DYS, arguably acting counter to what her supervisors wanted. Based on the information provided to this Court through the parties' briefings, the facts, when construed in the light most favorable to the Plaintiff, may indicate that there was a causal connection. However, that is not an issue of law for this Court to determine, but rather, an issue of material fact to be decided by a jury. Plaintiff has, therefore, met her burden under the First Amendment retaliation claim, and the burden now shifts to Defendants.

4.  *Defendants' Burden*

Once Plaintiffs have established a prima facie case of First Amendment retaliation, the burden then shifts to Defendants, who must show, "by a preponderance of the evidence, that the employment decision would have been the same absent the protected conduct." *Dye v. Office of the Racing Com'n*, 702 F.3d 286, 294 (6th Cir. 2012) (citing *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010)).  Since Plaintiffs have met their burden under their claim for First Amendment retaliation, summary judgment for defendants "is proper only if the evidence is such that *every* reasonable juror would conclude that defendants have met their burden of showing that [Defendants would have taken the same actions against Moore even if she had not testified before this Court in *S.H.*]." *Cockrel*, 270 F.3d at 1057.

Defendants argue that the available evidence demonstrates that they would have taken the same actions against Moore even if she had forgone testifying in 2010.  To support their claim, Defendants point to two pieces of evidence used by Moore.  First, Defendants state that Moore could not point to any evidence that indicates that moving her office closer to Superintendent Pigman's office was retaliatory.  Second, Defendants claim that the uncontroverted evidence demonstrates that Superintendent Pigman typically left Fred Nelson in charge of ORV, rather than Moore.

This Court does not find that Defendants have met their burden.  Though they point to specific facts to support their claim, there are issues of material fact that dissuade this Court from granting summary judgment.  Moreover, the evidence cited by Defendants does not meet the burden set forth by this Court, because it fails to show that every juror would find in Defendants' favor.

16

Based on the foregoing, Defendants' Motion for Summary Judgment and/or Qualified Immunity is **DENIED**.

### B.  Qualified Immunity

Defendants' final argument is that they are entitled to qualified immunity because Moore has failed to allege that she was engaged in any protected activity and has not pointed to any clearly established law that identifies Defendants' activity as unlawful.  Plaintiff counters that her testimony was a clearly established right under the First Amendment, relying on the Supreme Court's articulation of a clearly established right in *Anderson v. Creighton*:

> the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful…but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citations omitted).

The Supreme Court has held that, for a party to prevail in a § 1983 action for civil damages that involves "a government official performing discretionary function, the defense of qualified immunity…requires that the official be shown to have violated 'clearly established statutory or constitutional rights of which a reasonable person would have known." *Conn v. Gabert*, 526 U.S. 286, 290 (1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity, if applicable, provides a government official with immunity from suit and damages.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The ultimate burden of proof falls on the plaintiff to demonstrate that the defendant is not entitled to the defense of qualified immunity.  *Parks v. Warren Correctional Institution*, 51 F. App'x 137, 138 (6th Cir. 2002).

Defendants' claim for qualified immunity is discussed at length in this Court's Opinion and Order on Defendants' Motion to Dismiss Amended Complaint and/or for Qualified Immunity ("Opinion and Order"), in which this Court found that Moore had met the burden necessary to show that Defendants should not be granted qualified immunity. (Doc. 13). The Court articulated the two-step process that this Circuit employs when deciding questions of qualified immunity. First, the court must determine whether, on the plaintiff's facts, a constitutional violation has occurred. *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002). Second, the court considers whether that violation involved "clearly established constitutional rights of which a reasonable person would have known." *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996). As was established *supra*, Section IV.A, this Court, in its Opinion and Order, found that Moore had sufficiently shown that a constitutional violation had occurred, thereby meeting the first prong of the test. *See Evans-Marshall*, 428 F.3d at 232 (citing *Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 677–79 (6th Cir. 2001)) (explaining that the first prong of qualified immunity is met when First Amendment retaliation is adequately alleged).

The Court then turned its attention to the second prong:

> A reasonable person would understand that retaliating against a government employee who provided truthful testimony about a matter of public concern, specifically juvenile facilities and meal refusal occurring in these facilities, in compliance with a court order, would violate that employee's First Amendment rights.

(Doc. 13 at 12). Finding that "earlier cases involving fundamentally similar facts…provide[d] especially strong support for a conclusion that the law is clearly established," *Bell*, 308 F.3d at 601-02, this Court held that statements exposing potential corruption within a government-run entity are the exact types of statements that should be protected by the First Amendment. Though the action in question need not have been previously found to be unlawful, "in light of

18

pre-existing law, the unlawfulness must be apparent." *Id*. This Court held that, "in light of existing law, the unlawfulness of retaliating against an employee for speech exposing potential corruption in a government-run entity would be apparent to a reasonable person." (Doc. 13 at 12) (citing *Bell*, 308 F.3d at 601-02; *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)).

Though the parties have addressed the issue of qualified immunity for a second time, qualified immunity is a matter of law, and a question that has previously been decided by this Court. Defendants' claim for qualified immunity is, therefore, **DENIED**.

### C. Mootness

Defendants make a last ditch argument that claims brought against Defendants under their official capacities should be dismissed. Specifically, Defendants argue that, because Plaintiff is no longer employed by DYS, and the ORV site closed in September 2011, Plaintiff's claims for injunctive relief are now moot. The "case or controversy" requirement found in Article III of the United States Constitution dictates that federal courts "only have jurisdiction to decide cases that affect the rights of litigants." *Youngstown Publishing Co. v. McKelvey*, 189 F. App'x 402, 404 (6th Cir. 2006) (internal citation omitted). Cases are considered to be moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal quotations omitted). This Court does not accept Defendants' argument that, simply because the ORV facility is closed, they should now be relieved of liability in their official capacity. DYS itself has not been shut down, and, though ORV is closed, DYS currently maintains four Juvenile Correctional Facilities throughout the state. Plaintiff's claims brought against the defendants in

their official capacities did not cease to be legally cognizable, and thus were not mooted, upon the closing of ORV.  As such, Defendants' argument that claims brought against defendants in their official capacity are moot is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment and/or Qualified Immunity of Defendants Christine Money, Martha Spohn, Amy Ast, and David Pigman is **DENIED**.

**IT IS SO ORDERED.**

                                                          **s/Algenon L. Marbley**
                                                          **ALGENON L. MARBLEY**
                                                          **UNITED STATES DISTRICT JUDGE**

**Dated: February 4, 2014**